STATE OF NORTH CAROLINA v. RICHARD HAROLD SMITH, JR.

No. COA98-781

(Filed 6 July 1999)

## 1. Evidence— chain of custody—cocaine

The trial court did not abuse its discretion in a prosecution for possession of cocaine with intent to sell and deliver by admitting crack and a cellophane cigarette wrapper where defendant contended that the State did not establish the proper chain of custody and that the cocaine was from an unrelated transaction. The testimony of the deputy who received the evidence from an undercover officer was sufficient to establish the link in the chain of custody and the undercover officer's lack of testimony about the cellophane wrapper is merely an arguably weak link, properly considered by the jury.

## 2. Evidence— identification—pre-trial—suggestive—no irreparable misidentification

The trial court did not err in a prosecution for possession of cocaine with intent to sell and deliver by admitting an officer's pre-trial identification of defendant where the officer was shown a page from defendant's high school yearbook on which he was the only black male and below which his name was clearly printed, and the officer knew that she was identifying a black male and had been told defendant's name. The pre-trial identification was unnecessarily suggestive, but did not result in the strong probability of misidentification because the officer had ample opportunity to view defendant at the time of each crime, the officer was trained to maintain a high degree of attention when observing suspects and was aware that she would later identify defendant, she gave a detailed description of defendant, and she exhibited a high degree of certainty when shown the high school yearbook.

## 3. Evidence— identification—in-court not tainted by out-of-court

The trial court did not err in a prosecution for possession of cocaine with intent to sell and deliver by admitting an in-court identification of defendant where defendant argued that the in-court identification had been tainted by an out-of-court identification. The suggestiveness of the out-of-court identification did

not rise to a level conducive to irreparable mistaken identification and, as the officer had ample time to observe defendant at the scene of each crime, any uncertainty goes to the weight and not the admissibility of the testimony.

**4. Evidence— identification—voir dire not held on motion to suppress**

There was no prejudicial error in a prosecution for possession of cocaine with intent to sell and deliver in the trial court's failure to conduct a voir dire outside the presence of the jury on defendant's motion to suppress identification testimony. Although the court should have conducted a voir dire, the identification was not based on impermissibly suggestive procedures and the clear weight of the evidence shows several indicia of reliability.

Appeal by defendant from judgment entered 4 October 1996 by Judge Zoro J. Guice, Jr., in Transylvania County Superior Court. Heard in the Court of Appeals 8 June 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Christine M. Ryan, for the State.*

*David G. Belser for defendant-appellant.*

MARTIN, Judge.

Defendant appeals from convictions and active sentences imposed on two counts of sale and delivery of cocaine and two counts of possession of cocaine with intent to sell or deliver. At trial, the State offered evidence tending to show that on 4 March and 9 March 1995, the Transylvania County Sheriff's Department and the Brevard Police Department conducted undercover drug purchases. During each operation, undercover officer Susan Dermid met with William Lucas, a confidential informant, and the two drove around a Brevard housing project with the goal of purchasing drugs.

On 4 March, defendant sold Officer Dermid $200 worth of crack cocaine while she wore a one-way body wire monitored by other officers. Following the 4 March purchase, Officer Dermid gave a description of defendant over the body wire, and identified him as Rick Smith. Shortly after the purchases were made, Officer Dermid handed over all evidence received during the transaction to Transylvania County Sheriff's Deputy Gerald Frady.

**STATE v. SMITH**

[134 N.C. App. 123 (1999)]

On 9 March, Officer Dermid again purchased $200 worth of crack cocaine from defendant. Officer Dermid identified defendant over a body wire as the same man as before. On 9 March, Officer Dermid also bought crack cocaine from another suspect, allegedly Perry King. Officer Dermid kept the cocaine purchased from King separate from the cocaine purchased from defendant by placing the drugs from King in a cellophane wrapper from a pack of cigarettes. Shortly after the 9 March purchases were made, Officer Dermid turned over all evidence gathered to Deputy Frady.

The State offered evidence of Officer Dermid's pre-trial photograph identification of defendant, as well as an in-court identification. Defendant moved to suppress the identifications, and his motion was denied. The trial court did not conduct *voir dire* on defendant's motion. Defendant was also identified at trial by William Lucas, the police informant, as having sold Officer Dermid cocaine on both occasions. In addition, the State introduced a plastic bag containing crack cocaine and a cellophane wrapper from a cigarette pack, offering the evidence as the cocaine Officer Dermid purchased from defendant on 4 March. Defendant offered evidence tending to show that he was at his sister's home on 9 March 1995, and that he stands about 6' tall, and wore a goatee in March 1995.

A jury found defendant guilty of two counts of sale and delivery of cocaine, and two counts of possession of cocaine with intent to sell or deliver, and he was sentenced to 6-8 months in prison suspended on supervised probation. Defendant appeals.

I.

**[1]** Defendant first argues that the trial court violated his right to due process by admitting into evidence the bag containing the crack cocaine and cellophane cigarette wrapper. Specifically, defendant asserts that the State did not establish the proper chain of custody, and that the cocaine contained in the bag was sold to Officer Dermid by Perry King in a transaction unrelated to defendant. Admission of actual evidence is at the trial court's discretion, and the identification of such evidence need not be unequivocal. *State v. Stinnett*, 129 N.C. App. 192, 497 S.E.2d 696, *disc. review denied*, 348 N.C. 508, 510 S.E.2d 669, *cert. denied* 525 U.S. 1008, 142 L.Ed.2d 436 (1998).

> The trial court exercises its discretion "in determining the standard of certainty that is required to show that an object offered is the same as the object involved in the incident and is in

unchanged condition. A detailed chain of custody need be established only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered. Further, any weak links in a chain of custody relate only to the weight to be given the evidence and not to its admissibility."

*Stinnett* at 198, 497 S.E.2d at 700 (quoting *State v. Campbell*, 311 N.C. 386, 388-89, 317 S.E.2d 391, 392 (1984)).

In *Stinnett*, the State introduced evidence of a two-dollar bill allegedly found on the defendant's person. Although the arresting officer testified that he did not remember finding the bill on the defendant, a second officer testified that the evidence bag he received from the arresting officer contained the two-dollar bill. *Id.* at 198, 497 S.E.2d at 700-01. This Court held that "[a]lthough the arresting officer does not remember the plastic-encased two-dollar bill, any arguably weak links in the chain of custody go to the weight of the evidence and not to the issue of whether the evidence should be admitted." *Id.* at 198, 497 S.E.2d at 701.

Similarly, in the present case, Officer Dermid made no mention of a cellophane plastic wrapper during her testimony concerning the 4 March purchase. She testified that she carried the 11 rocks of cocaine sold to her by defendant on 4 March in her bare hand until she gave them to Deputy Frady. Officer Dermid's only testimony concerning a cellophane wrapper related to her 9 March purchase from Perry King; however, Deputy Frady testified that the drugs from the 4 March purchase were also in a cellophane plastic wrapper when he received them from Officer Dermid shortly after the purchase. As with the receiving officer's testimony in *Stinnett*, Deputy Frady's testimony was sufficient to establish the link in the chain of custody, and Officer Dermid's lack of testimony with respect to the cellophane wrapper contained in the evidence bag from 4 March, is merely an arguably weak link in the chain of custody, properly considered by the jury in weighing the reliability of the evidence. The trial court properly exercised its discretion in admitting evidence of the cocaine.

II.

[2] Defendant next argues that Officer Dermid's in-court and out-of-court identifications of defendant should have been suppressed where tainted by unnecessarily suggestive pre-trial identification procedures in violation of due process. " 'The first inquiry when a motion

is made to suppress identification testimony is whether the pretrial identification procedure is impermissibly suggestive.' " *State v. Green*, 129 N.C. App. 539, 554, 500 S.E.2d 452, 462 (1998), *affirmed*, 350 N.C. 59, 510 S.E.2d 375 (1999) (quoting *State v. Powell*, 321 N.C. 364, 368-69, 364 S.E.2d 332, 335 (1988)). Where defendant fails to show that impermissibly suggestive procedures were used, the trial court need not exclude the identification. *State v. Smith*, 130 N.C. App. 71, 502 S.E.2d 390 (1998). However, if the defendant shows that the identification is impermissibly suggestive, he must next prove that "under the totality of the circumstances, the suggestive procedures gave rise to a substantial likelihood of irreparable misidentification." *Id.* at 74, 502 S.E.2d at 392 (citing *State v. Capps*, 114 N.C. App. 156, 162, 441 S.E.2d 621, 624 (1994)).

In the present case, testimony revealed that Deputy Frady conducted a pre-trial identification procedure with Officer Dermid wherein he showed Officer Dermid a page from defendant's high school year book. Defendant's picture was the only picture of a black male on the page, and defendant's name was printed below his picture and clearly visible. Officer Dermid knew that the suspect she was attempting to identify was a black male, and William Lucas had previously told her defendant's name as it appeared under his photo. In view of such evidence, defendant has met his burden of proving that the pre-trial identification procedure was unnecessarily suggestive.

However, the fact that an identification procedure is unnecessarily suggestive does not *ipso facto* render the identification evidence inadmissible; defendant must also show that the identification was "irreparably suggestive, resulting in the strong probability of misidentification and violation of due process." *State v. Breeze*, 130 N.C. App. 344, 350, 503 S.E.2d 141, 145, *disc. review denied*, 349 N.C. 532, —— S.E.2d —— (1998) (citing *State v. McCraw*, 300 N.C. 610, 613-14, 268 S.E.2d 173, 175-76 (1980)). Whether there is a substantial likelihood of misidentification depends upon whether "under the totality of circumstances surrounding the crime itself 'the identification possesses sufficient aspects of reliability.' " *State v. Richardson*, 328 N.C. 505, 510, 402 S.E.2d. 401, 404 (1991) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 106, 53 L.Ed.2d 140, 149 (1977)). In determining the existence of irreparable misidentification, the court must examine the totality of the circumstances, including:

(1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness' degree of attention; (3) the

accuracy of the witness' prior description of the perpetrator; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Breeze* at 350, 503 S.E.2d at 145-46 (citing *State v. Wilson*, 313 N.C. 516, 529, 330 S.E.2d 450, 460 (1985)).

The evidence shows that prior to making the yearbook identification, Officer Dermid had ample opportunity to view defendant at the time of each crime. On each occasion, Officer Dermid was within a few feet of defendant while he was getting into the car, sitting in the car, and having a conversation with her. Officer Dermid was able to observe defendant under the dome light of the car. Furthermore, Officer Dermid testified that she has been trained to maintain a high degree of attention when observing suspects, she has the benefit of having attended twenty-two training schools, including those on informant training and control, and she was aware that part of her responsibility as a trained law enforcement officer would require that she later identify defendant. Officer Dermid gave a detailed description of defendant following the 4 March purchase, and on 9 March identified defendant as the same man as before. When shown the high school yearbook containing defendant's picture, Officer Dermid exhibited a high level of certainty, as she "immediately recognized the picture." Under the totality of the circumstances Officer Dermid's pre-trial identification of defendant did not give rise to "a substantial likelihood of irreparable misidentification," and the trial court therefore did not err in admitting the evidence.

[3] Defendant also argues that the pre-trial identification procedure tainted Officer Dermid's in-court identification of defendant. In-court identifications are generally admissible, yet they may be excluded "if 'tainted by a prior confrontation in circumstances shown to be "unnecessarily suggestive and conducive to irreparable mistaken identification." ' " *State v. Caporasso*, 128 N.C. App. 236, 239, 495 S.E.2d 157, 160 (1998) (citations omitted). In view of our holding that the suggestiveness of the pre-trial identification did not, in the totality of the circumstances, rise to a level conducive to irreparable mistaken identification, we hold that any effect of the pre-trial identification on Officer Dermid's in-court identification is not a basis for its exclusion.

Moreover, the same indicia of reliability in Officer Dermid's pre-trial identification of defendant applies to her in-court identification.

" 'An in-court identification is . . . competent where the in-court identification is based on the witness' observations at the time and scene of the crime.' " *Id.* As stated above, Officer Dermid had ample time to observe defendant at the scene of each crime, and "any uncertainty in that identification goes to the weight and not the admissibility of the testimony." *Id.* The trial court properly denied defendant's motion to suppress.

## III.

**[4]** Defendant assigns error to the trial court's refusal to conduct *voir dire* outside the presence of the jury on defendant's motion to suppress evidence of Officer Dermid's pre-trial and in-court identifications of defendant. As a general rule, a trial court should conduct a hearing in the absence of the jury in order to determine the admissibility of identification testimony. *State v. Thomas,* 35 N.C. App. 198, 241 S.E.2d 128 (1978). However, a failure to conduct a *voir dire* on identification issues does not necessarily require the granting of a new trial. The standard for reversal is whether a different result could reasonably be expected upon retrial if all evidence of pretrial photographic identification was excluded. *State v. Stepney,* 280 N.C. 306, 185 S.E.2d 844 (1972). The trial court's failure to hold a *voir dire* is harmless where the evidence shows that the identification "originated with the witness's observation of defendant at the time of the crime and not from an impermissibly suggestive pretrial identification procedure." *State v. Flowers,* 318 N.C. 208, 216, 347 S.E.2d 773, 778 (1986).

In this case, while the trial court should have conducted a *voir dire* hearing in order to determine whether Officer Dermid's identifications were admissible, the failure to do so was harmless where neither identification was based on impermissibly suggestive procedures, and the clear weight of the evidence, as set forth above, shows several indicia of reliability in Officer Dermid's identifications which stemmed from her independent observations of defendant on 4 and 9 March. Defendant was not prejudiced by the trial court's failure to conduct *voir dire. See Stepney* at 314, 185 S.E.2d at 850 (where pretrial viewing of photographs was free of impermissible suggestiveness, and evidence was clear and convincing that identification originated with observation of defendant at the time of the crime and not with the photographs, failure of trial court to conduct a *voir dire* and make findings of fact was harmless error).

Defendant received a fair trial, free from prejudicial error.

No error.

Judges GREENE and WYNN concur.