STATE OF NORTH CAROLINA
v.
DEVON GADDY
No. COA08-971
Court of Appeals of North Carolina
Filed April 7, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Kimberley A. D'Arruda, for the State.
Robert W. Ewing for Defendant.
STEPHENS, Judge.
Defendant Devon Gaddy was convicted of one count of robbery with a dangerous weapon at the 18 February 2008 Criminal Session of Durham County Superior Court. Judgment and commitment sentencing Defendant to a prison term of 61 to 83 months was entered on 22 February 2008. Defendant gave prompt oral notice of appeal.

I. Facts
On 11 January 2005, at approximately 5:30 p.m., Chauncey Burgess and John Hicks were standing outside Brogden Middle School ("Brogden"), where they were students, waiting for Burgess' mother to pick them up after football practice. Two males, one later identified as Defendant and the other later identified as Travis Dean, approached Burgess and Hicks and talked to them. Defendant and Dean then walked across the street. After talking with each other, Defendant and Dean crossed back over the street and approached Burgess and Hicks again. Defendant displayed a gun and one of the perpetrators demanded that Burgess give them his limited edition Air Force shoes and South Pole jacket.
After taking Burgess' jacket and shoes, Defendant and Dean started walking, and then running, toward an apartment complex across from the school. About one minute later, Burgess borrowed a cell phone and called the police. Officer Andre Caldwell, a police officer with the City of Durham, responded to the call. Burgess and Hicks reported the incident to Caldwell, describing the perpetrators as black males and giving clothing descriptions. Neither Burgess nor Hicks recalled having seen the perpetrators prior to the incident.
The following day, Burgess and Hicks were asked to look at a school yearbook to possibly identify anyone who had been involved in the incident. K.L. Johnson, an investigator with the Durham Police Department who also worked off-duty as a security officer at Brogden, was present when they looked at the yearbook. Burgess and Hicks looked at the yearbook separately and both identified Dean as being involved in the robbery. Hicks also identified Defendant as a possible perpetrator, although he was not sure. After Burgess and Hicks identified Dean, Johnson was outside on bus duty when he saw Dean across the street from the school. Johnson called for assistance and Caldwell arrived and placed Dean under arrest. Johnson, who knew Dean from Johnson's work at Brogden, went to Dean's home and spoke to Dean's father about the incident. Dean's father found Burgess' jacket in Dean's room. Burgess' shoes were never located.
Dean was charged with robbery with a dangerous weapon. On 20 January 2006, with counsel present, Dean gave a statement to Johnson about the incident. Based on this statement, Johnson took out a warrant for Defendant's arrest on 6 October 2006.
During Defendant's trial, Dean identified Defendant as "Tony . . . Gaddy" and admitted that Defendant is also known as Devon Gaddy. Defendant then read from his statement as follows:
"On January 11th, 2005, I was with Tony Gaddy. He came and showed me and my friend Taji his rifle. . . . While we was [sic] walking through Brogden we seen [sic] two kids. Tony went to talk to them. We walked off, then came back to the kids. We asked him to take off the boy's shoes and the jacket. Tony flashed him the gun and he took off his stuff. And then we ran to Brogden Court Apartments."
Dean entered a guilty plea to charges of conspiracy to commit robbery with a dangerous weapon and accessory after the fact to robbery with a dangerous weapon. The plea required Dean to cooperate and testify about the incident at Defendant's trial.

II. Identification Testimony
By Defendant's first arguments, he alleges that the trial court erred in failing to conduct a voir dire hearing in order to determine the admissibility of out-of-court and in-court identification of Defendant and in allowing the out-of-court and in-court identification of Defendant by Burgess and Hicks. Even upon a general objection, "a trial court should conduct a hearing in the absence of the jury in order to determine the admissibility of identification testimony." State v. Smith, 134 N.C. App. 123, 129, 516 S.E.2d 902, 907 (1999). See also State v. Stepney, 280 N.C. 306, 314, 185 S.E.2d 844, 850 (1972) ("[T]he trial judge, even upon a general objection only, should conduct a voir dire in the absence of the jury, find facts, and thereupon determine the admissibility of in-court identification testimony.").

A. Burgess' Testimony
Prior to trial, Defendant made a motion in limine to suppress any in-court identification of Defendant by Burgess. Defendant alleged that the pre-trial identification of Defendant resulted from a "highly suggestive procedure" that would "impermissibly taint" the in-court identification of Defendant by Burgess. Just prior to trial, defense counsel informed the court that he had filed the motion to suppress and stated:
I don't know if you want to take that up when we get to that point, or what. I'm not even sure at this point we want to pursue that if Mr. Burgess isn't going to be here. Anyway, that's out there.
The trial court replied, "Let's go ahead and get the jury picked." After the trial commenced, Burgess was called as a witness by the State. When asked by the prosecutor if he could identify anyone in the courtroom who had perpetrated the robbery, Defendant made a general objection, which the trial court overruled. Burgess subsequently identified Defendant as the perpetrator. We conclude that the trial court's failure to conduct a voir dire in order to determine the admissibility of Burgess' in-court identification testimony was error. See State v. Butler, 331 N.C. 227, 236, 415 S.E.2d 719, 724 (1992).
However, the failure to conduct a voir dire on identification issues does not necessarily require the granting of a new trial. Smith, 134 N.C. App. at 129, 516 S.E.2d at 907. A trial court's failure to hold a voir dire is harmless where the pretrial identification procedure "was free of impermissible suggestiveness, and the evidence is clear and convincing that [D]efendant's in-court identification originated with observation of Defendant at the time of the robbery and not with the photographs[.]" Stepney, 280 N.C. at 314, 185 S.E.2d at 850. Accord State v. Flowers, 318 N.C. 208, 216, 347 S.E.2d 773, 778 (1986).
Defendant alleges that the pre-trial identification of Defendant was impermissibly suggestive as Johnson, the investigating officer, was present when Burgess was shown the yearbook and "the photographs were not shown sequentially" and "were not current photos[.]" However, Burgess never identified Defendant from the yearbook during the pre-trial identification process. Accordingly, the process could not have been impermissibly suggestive and Burgess' identification of Defendant at trial could not have originated with the yearbook photographs.
Furthermore, the record reveals clear and convincing evidence that Burgess' in-court identification of Defendant as the perpetrator originated with his observation of Defendant at the time of the incident. That evidence includes the following: (1) while the incident occurred at about 5:30 p.m. when it was getting dark, Burgess and Hicks were standing in the school parking lot which was illuminated by lights; (2) Burgess had ample opportunity to observe Defendant as the perpetrator when Defendant and Dean walked up to Burgess and Hicks, had a conversation with them, walked across the street and spoke to each other, and then came back "right in front of" Burgess and confronted Burgess and Hicks; and (3) Defendant commanded Burgess' attention by brandishing a gun. Under these circumstances, it is clear that Burgess was able to observe Defendant prior to and during the commission of the crime. Accordingly, as the pretrial identification procedure was not impermissibly suggestive and the evidence is clear and convincing that Defendant's in-court identification originated with observation of Defendant at the time of the robbery and not with the photographs, Stepney, 280 N.C. at 314, 185 S.E.2d at 850, we hold that the failure of the trial court to conduct a voir dire on the possibility of taint from a suggestive pre-trial photographic identification process is harmless and the trial court did not err in allowing Burgess' testimony.

B. Hicks' Testimony
The State did not notify Defendant that Hicks would be testifying at trial until after jury selection. Accordingly, Defendant's pre-trial motion in limine to suppress in-court identification of Defendant did not pertain to Hicks' testimony. Before testimony began, Defendant made a motion in limine to prevent Hicks from testifying altogether, arguing:
[Hicks] was interviewed on January 11th, 2005, and it wasn't disclosed in any of the discovery I received, and it's over three years ago, Your Honor. It would be our intention [sic] it would be unfair surprise for them to be allowed to  for him to be allowed to testify at this point. . . .
By this motion Defendant sought to prevent Hicks from testifying specifically due to "unfair surprise[.]" Defendant did not indicate that he was moving to suppress Hicks' identification testimony based on impermissible pre-trial identification procedures. Furthermore, Defendant did not object when Hicks was called to testify nor did Defendant object generally to the prosecutor's questions or Hicks' testimony during the following exchanges:
[State]: Now, do you see the person in the courtroom who showed the gun that day?
[Hicks]: I'm not sure.
. . . .
[State]: . . . [T]ell us if that's the yearbook that you looked through that day.
[Hicks]: Yes, I think it is.
[State]: All right. Now, were you asked to identify either or both of the individuals who had come up?
[Hicks]: Yes, sir.
[State]: Were you able to do that?
[Hicks]: Yes, sir.
[State]: Now, did you pick out one person or two persons?
[Hicks]: Two
[Defense counsel]: Objection to the leading.
The Court: Overruled.
[State]: Two?
[Hicks]: Yes, sir.
As Defendant failed to make even a general objection to the prosecutor's questions or Hicks' testimony regarding the pre-trial identification procedures, the trial court did not err by not conducting a voir dire to determine the admissibility of any in-court identification testimony allegedly tainted by suggestive pre-trial photographic identification procedures. More importantly, however, Hicks never testified that Defendant was one of the two persons Hicks picked out from the yearbook and never identified Defendant at trial as having been involved in the incident. Thus, even if the trial court erred in allowing Hicks to testify, such error would have been nonprejudicial. N.C. Gen. Stat. § 15A-1443 (2007). Accordingly, the assignments of error upon which Defendant's arguments are based are overruled.

III. Exclusion of Hicks' Testimony
By Defendant's final argument, he contends the trial court abused its discretion in not excluding the testimony of Hicks where the State failed to reveal Hicks' name or the contents of his interview with police in discovery and failed to make Defendant aware that Hicks would be testifying at trial until after jury selection. Pursuant to N.C. Gen. Stat. § 15A-910, if the trial court determines that a party has failed to comply with discovery, the trial court may
(1) Order the party to permit the discovery or inspection, or
(2) Grant a continuance or recess, or
(3) Prohibit the party from introducing evidence not disclosed, or
(3a) Declare a mistrial, or
(3b) Dismiss the charge, with or without prejudice, or
(4) Enter other appropriate orders.
N.C. Gen. Stat. § 15A-910(a) (2007). The particular remedy the trial court chooses is reviewable on appeal only for an abuse of discretion. State v. Dukes, 305 N.C. 387, 390, 289 S.E.2d 561, 562 (1982). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." Chicora Country Club, Inc. v. Town of Erwin, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997) (quotation marks and citation omitted), disc. review denied, 347 N.C. 670, 500 S.E.2d 84 (1998).
Prior to trial, Defendant filed a Request For Voluntary Discovery and a Motion to Compel Discovery pursuant to N.C. Gen. Stat. §§ 15A-902 and 903. Although the State filed a Response and two Supplemental Responses to the motion, the discovery the State provided did not list the name of John Hicks as a witness nor did it contain his interview with police. Moreover, although before jury selection the State was required to give Defendant a written list of the names of witnesses whom the State reasonably expected to call during trial, N.C. Gen. Stat. § 15A-903(a)(3), the Statedid not provide Defendant the name of John Hicks until after jury selection.
Upon learning that the State intended to call Hicks as a witness, Defendant made a motion in limine to exclude any testimony by Mr. Hicks. He was interviewed on January 11th, 2005, and it wasn't disclosed in any of the discovery I received, and it's over three years ago, Your Honor. It would be our intention [sic] it would be unfair surprise for them to be allowed to  for him to be allowed to testify at this point. The case has been called for trial three or four times.
Initially, the trial court ruled that Hicks would not be allowed to testify. Subsequently, however, the court called a recess to allow the State and Defendant to meet with Hicks. Thereafter, the trial court announced that "[s]ince the defense attorney and the State have both had an opportunity to talk with Mr. Hicks, considering all of the circumstances, I am reversing my ruling . . . and he will be allowed to testify over objection." Defendant argues that the court erred in not excluding the evidence under N.C. Gen. Stat. § 15A-910(a)(3). Although we agree with the trial court that the State's actions and omissions at a minimum "[r]eek[ed] of sloppiness" and were "just absolutely inexcusable[,]" and we admonish the prosecutor for such conduct, we cannot say the trial court abused its discretion in selecting the second option under section 15A-910(a) and granting a recess to allow Defendant to meet with Hicks before he testified. See State v. Fenn, 94 N.C. App. 127, 133, 379 S.E.2d 715, 719 (finding no abuse of discretion where the trial court granted the defendant arecess in order to review the evidence not produced by the State in discovery), disc. review denied, 325 N.C. 548, 385 S.E.2d 504 (1989). Defendant's assignment of error is thus overruled.
We conclude Defendant received a fair trial, free of error.
NO ERROR.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).